# Richard L. Elkins v. Microsoft Corporation

[817 A.2d 9]

No. 01-431

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed November 1, 2002

*Kirsten A. Beske, David N. Dunn,* and *Potter Stewart, Jr.* of *Potter Stewart, Jr. Law Offices, P.C.,* Brattleboro, for Plaintiff-Appellant.

*Robert Luce* of *Downs Rachlin Martin, PLLC,* Burlington, and *David Tulchin* of *Sullivan & Cromwell (Of Counsel),* New York, New York, for Defendant-Appellee.

*William H. Sorrell,* Attorney General, and *Julie Brill* and *David B. Borsykowsky,* Assistant Attorneys General, Montpelier, for Amicus Curiae State of Vermont.

**Dooley, J.** This is an appeal from the trial court's dismissal of a class action suit brought under the Vermont Consumer Fraud Act (VCFA or the Act), 9 V.S.A. §§ 2451-2480g. Plaintiff, Richard Elkins, alleged that defendant Microsoft Corporation (Microsoft) used its monopoly power to overprice the Windows 98 operating system which plaintiff purchased pre-installed in a personal computer from a computer manufacturer (called original equipment manufacturer or OEM). Based on the United States Supreme Court decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the superior court dismissed the case because plaintiff was only an indirect purchaser of Windows 98, that is, he purchased it from the OEM rather than Microsoft. Plaintiff appeals arguing that he does not have to be a direct purchaser to sue under the VCFA. We agree and reverse and remand.

The facts of this case are not in dispute. Microsoft is the leading supplier of operating system software for personal computers. Microsoft distributed its Windows 98 operating system through OEM's, who pre-installed the software on personal computers they sold to consumers, and through retailers of CD-ROMs containing the software. In February 1999, plaintiff purchased a computer with a pre-installed Microsoft Windows 98 operating system. He subsequently brought suit under the VCFA, alleging that he and other similarly situated Vermont licensees of Windows 98 were injured by Microsoft's abuse of its monopoly power in charging consumers a price in excess of the price it would have been able to charge in a competitive market.

Microsoft moved to dismiss the complaint on the grounds that an "indirect purchaser" such as plaintiff does not suffer cognizable damages in an unfair competition case and thus is barred from bringing a claim under the VCFA. The trial court agreed and granted the motion.

The issue on appeal is the same as before the trial court: whether, given the *Illinois Brick* decision and the statutory language of the VCFA, an indirect purchaser is barred from bringing an action for antitrust violations under the VCFA. Plaintiff and amicus curiae State of Vermont argue that a suit by an indirect purchaser under the VCFA is not barred because (1) the VCFA provides a cause of action for indirect purchasers, and (2) the *Illinois Brick* indirect purchaser rule is not applicable because it construes the Clayton Antitrust Act, and not the VCFA, and our construction of the VCFA is not guided by federal Clayton Act decisions. In response, Microsoft argues that (1) an indirect purchaser cause of action did not exist under the VCFA until the 2000 amendment, which became effective after plaintiff

acquired his copy of Windows 98, and (2) the indirect purchaser rule of *Illinois Brick* controls here because there is no express statutory provision in the VCFA providing indirect purchasers a cause of action and because the VCFA directs that construction of its terms be guided by federal law.

A motion to dismiss for failure to state a claim should not be granted unless there exists no facts or circumstances that would entitle plaintiff to relief. *Richards v. Town of Norwich*, 169 Vt. 44, 48, 726 A.2d 81, 85 (1999). On review of the trial court's disposition of the motion to dismiss, this Court will assume the truth of all factual allegations pleaded in the complaint as well as all reasonable inferences that may be derived from the pleadings. *Id.* at 48-49, 726 A.2d at 85. To the extent that our review of the trial court's decision involves questions of statutory construction, and thus questions of law, it is nondeferential and plenary. *State v. Koch*, 169 Vt. 109, 112, 730 A.2d 577, 580 (1999).

We begin with the applicable provisions of the VCFA and then consider the impact of *Illinois Brick*.

As with any attempt at statutory construction, we begin with the plain meaning of the statutory language, because we presume that it reflects the Legislature's intent. *Dover Town Sch. Dist. v. Simon*, 162 Vt. 630, 631, 650 A.2d 514, 516 (1994) (mem.).

The central provision of the VCFA is 9 V.S.A. § 2453(a), which provides:

> (a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.

The Act goes on to provide a private remedy for violations:

> *Any consumer* who ... sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title ... may sue for appropriate equitable relief and may sue and recover from the seller, solicitor or *other violator* the amount of his damages ....

*Id.* § 2461(b) (emphasis added). "Consumer" is defined by the Act as:

> *[A]ny* person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit

of a member of his or her household, or in connection with the operation of his or her household . . . .

*Id.* § 2451a(a) (emphasis added).

■ The statutory language contains no privity requirement, that is, no provision that the consumer can sue only the retailer and no one further up the supply chain. In general, we will not read provisions into the statute that are not present unless it is necessary in order to make the statute effective. *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996). The Act expressly states that *any* consumer, reinforced by the definition of consumer as *"any* person," who suffers injury may bring an action under the statute against a "seller, solicitor or *other violator."* The language does not support the imposition of a privity requirement.

The plain meaning of the language is supported by the express legislative intent behind the statute to "protect the public" against "unfair or deceptive acts or practices" and to "encourage fair and honest competition." 9 V.S.A. § 2451; see *State v. Int'l Collection Serv., Inc.*, 156 Vt. 540, 543, 594 A.2d 426, 429 (1991); *Gramatan Home Investors Corp. v. Starling*, 143 Vt. 527, 536, 470 A.2d 1157, 1162 (1983) (purpose of VCFA includes "to encourage a commercial environment highlighted by integrity and fairness"). In light of this purpose, this Court has repeatedly held that the VCFA is "remedial in nature" and therefore must be construed "liberally so as to furnish all the remedy and all the purposes intended." *State v. Custom Pools*, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988); see also *Carter v. Gugliuzzi*, 168 Vt. 48, 52, 716 A.2d 17, 21 (1998) (VCFA should be applied "liberally to accomplish its purposes"); *State v. Therrien*, 161 Vt. 26, 31, 633 A.2d 272, 275 (1993). Of course, liberal construction does not allow us to stretch the language beyond legislative intent. See *Wilder v. Aetna Life & Casualty Ins. Co.*, 140 Vt. 16, 19, 433 A.2d 309, 310 (1981).

The Legislature clearly intended the VCFA to have as broad a reach as possible in order to best protect consumers against unfair trade practices. This intent underlies a private remedy section that allows suits by "any consumer" with no suggestion of a distinction between direct and indirect purchasers. It also underlies a description of proper defendants including not only a seller or solicitor, but also an "other violator," a broad term that covers defendant in this case. We think in this context that any restriction to impose a privity requirement, that is to allow only direct purchasers to sue, must be stated in clear terms. See *Int'l Collection Serv., Inc.*, 156 Vt. at 549-50, 594 A.2d at 429 (in the

absence of express language limiting Attorney General's enforcement power to personal consumer victims, plain meaning supports actions against defendants who engage in unfair and deceptive practices with respect to business consumers); *Custom Pools*, 150 Vt. at 536, 556 A.2d at 74 (if Legislature intended that Attorney General cannot sue a finance company that benefitted from the consumer fraud of a seller, "it could have done so with clear language to that effect").

Although we have never addressed the precise question before us, two of our decisions are instructive. In *Carter v. Gugliuzzi*, we held that a home purchaser could sue a real estate broker under § 2461(b) as a "seller" even though the broker did not own the home when it was sold to the plaintiff. Relying on the broad remedial purpose of the VCFA, the plain meaning of the term "seller," and the lack of any explicit limitation on that term, we held that the broker could be sued under § 2461(b) for deceptive representations that induced the sale. 168 Vt. at 53, 716 A.2d at 22. Also relevant is *Poulin v. Ford Motor Co.*, 147 Vt. 120, 513 A.2d 1168 (1986), where a purchaser of an automobile sued both the dealer and the manufacturer because a representative of the manufacturer misrepresented that the specific model purchased was produced in very limited numbers so that its value would increase. We affirmed a jury verdict against both the dealer and manufacturer in response to various claims that plaintiff had failed to present the proof required by the statute, *id.* at 125-27, 513 A.2d at 1172-73, although we did not confront the precise claim made here. *Poulin* is exactly the kind of case that demonstrates that a privity requirement would seriously undermine the utility of the Act. Virtually all of the representations about the quality and features of a modern automobile are made by manufacturers, most through national and regional media advertisements. If we enforced a privity requirement, the consumer could not reach the perpetrator of consumer fraud.

Microsoft suggests that another decision, *Wilder v. Aetna Life & Casualty Insurance Co.*, supports a privity requirement. In *Wilder*, plaintiff had been in an automobile accident with defendant's insured and sued the insurer under VCFA claiming it had failed to pay plaintiff pursuant to a settlement agreement. The main holding of *Wilder* is that the sale of an insurance policy is not a contract of "goods or services" under §§ 2461(b) and 2451a(a) (definition of "consumer"). 140 Vt. at 18, 433 A.2d at 310. This Court added, however, that we were "not dealing with a contractual situation between buyer and seller" but instead being asked "to read into the Act a transaction one step removed." *Id.* at 19, 433 A.2d at 310. Microsoft argues that this

language precludes a suit by an indirect purchaser, who is "one step removed."

Microsoft misreads the *Wilder* alternative holding. The problem in *Wilder* was that the plaintiff was not a purchaser of the alleged good or service at all and, in that sense, was removed from the transaction that was needed to bring the transaction under § 2461(b). Here, plaintiff indisputably contracted for goods that included the Windows 98 operating system.

Microsoft also argues that the Legislature clearly intended that § 2461(b) did not provide a remedy to indirect purchasers *in antitrust actions* as shown by Act 65, a 2000 amendment to the VCFA. We consider this argument in the next section because it arises from Microsoft's central position that we should treat VCFA antitrust actions differently from VCFA consumer protection actions and require privity for the former even if we do not require it for the latter. We turn now to the effect of federal law.

Microsoft's argument is based on the United States Supreme Court decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). In *Illinois Brick*, the State of Illinois, on its own behalf and on behalf of a number of local government entities, brought an action under § 4 of the Clayton Act alleging that defendants, manufacturers and distributors of concrete block, had conspired to fix the price of concrete block in violation of § 1 of the Sherman Act. The state and the local governments were all indirect purchasers of concrete block because the block was sold by the manufacturers directly to contractors to construct buildings, which were later sold to state and governmental entities. The United States Supreme Court, relying on the earlier case of *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), held that "the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property' within the meaning of [§ 4 of the Clayton Act]." *Illinois Brick*, 431 U.S. at 729. Plaintiffs, therefore, were not entitled to recover the illegal overcharges that were passed on to them via the contractors. *Id.* at 735. *Illinois Brick* announced what has become to be known as the "indirect-purchaser" rule: a party who does not purchase a product directly from an antitrust violator is barred from bringing a cause of action for overcharge against that violator under *federal* law. See *California v. ARC America Corp.*, 490 U.S. 93, 96-97 (1989); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 708 (D. Md. 2001).

The critical decision in understanding the effect of *Illinois Brick* on this action is *California v. ARC America Corp.*, in which defendants in state antitrust actions argued that allowing indirect purchasers to sue under state antitrust acts frustrated federal law so that such claims were preempted by federal law. The Court rejected this claim:

> It is one thing to consider the congressional policies identified in *Illinois Brick* and *Hanover Shoe* in defining what sort of recovery federal antitrust law authorizes; it is something altogether different, and in our view inappropriate, to consider them as defining what federal law allows States to do under their own antitrust law. As construed in *Illinois Brick*, § 4 of the Clayton Act authorizes only direct purchasers to recover monopoly overcharges under federal law. We construed § 4 as not authorizing indirect purchasers to recover under federal law because that would be contrary to the purposes of Congress. But nothing in *Illinois Brick* suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws.

490 U.S. at 103. The Court later reiterated this theme: "When viewed properly, *Illinois Brick* was a decision construing the federal antitrust laws, not a decision defining the interrelationship between the federal and state antitrust laws." *Id.* at 105. Thus, under *ARC America*, states are free to determine how best to protect consumers against antitrust violations; in crafting or amending state antitrust law, states can decide whether to adopt the indirect purchaser rule of *Illinois Brick*.

Microsoft contends that *ARC America* stands for the rule that *express* statutory language is required in order to permit indirect purchasers to recover under state antitrust law. Microsoft bases its contention on the Court's statement of the issue before it: "whether this rule limiting recoveries under the Sherman Act also prevents indirect purchasers from recovering damages flowing from violations of state law, despite express state statutory provisions giving such purchasers a damages cause of action." *Id.* at 100. We read this language, which comes early in the opinion, as a description of the issue rather than a limitation on the holding. That reading is reinforced by the fact that one of the state plaintiffs, Arizona, did not have an express provision in its statute allowing indirect purchaser suits, see *Bunker's Glass Co. v. Pilkington PLC*, 47 P.3d 1119, 1125-26 n.7 (Ariz. Ct. App. 2002), but the Court acknowledged that the statute

"might be interpreted as a matter of state law as authorizing indirect purchasers to recover." *ARC America Corp.*, 490 U.S. at 98 n.3. More importantly, there is nothing in the rationale of *ARC America* to suggest that a state is not free to express its own policy in any way it desires. We reject Microsoft's narrow reading of *ARC America*. The issue before us is not whether the Vermont Legislature can allow indirect purchasers to sue; it is instead whether it has.

We now reach Microsoft's central argument that the holding of *Illinois Brick* should be followed in Vermont because § 2453(b) directs that construction of the VCFA should be guided by federal law. Section 2453(b) provides:

> It is the intent of the legislature that in construing subsection (a) of this section, the courts of this state will be guided by the construction of similar terms contained in section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States.

The text of subsection (a) is set out earlier in this opinion and is taken from § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). Microsoft construes the phrase "and the courts of the United States" in § 2453(b) as encompassing federal court decisions interpreting all federal antitrust statutes, including the Clayton Act and the Sherman Act. See also 9 V.S.A. § 2451 (the purpose of the VCFA is "to complement the enforcement of federal statutes and decisions governing unfair methods of competition."). It argues, therefore, that § 2453(b) requires this Court to follow the indirect purchaser rule of *Illinois Brick* and affirm the dismissal of Elkins's claim. For a number of reasons, we cannot agree with this construction of the "harmonization" provision.

First, Microsoft plainly misreads the language of § 2453(b). The phrase "and the courts of the United States" is part of the larger phrase "by the construction of similar terms contained in section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States," and must be so limited as to include only those federal decisions construing the Federal Trade Commission Act. Microsoft's reading would have us divorce the phrase "in the courts of the United States" from its context and thus construe § 2453(b) as stating in effect "the courts of this state will be guided by ... the courts of the United States." Not only is this reading implausible, it also produces a

direction so broad as to be practically meaningless. See *State v. Yorkey*, 163 Vt. 355, 358, 657 A.2d 1079, 1080 (1995) ("[T]here is a presumption that the Legislature does not intend to enact meaningless legislation . . . [and], thus, when we construe a statute, we must do so in a manner that will not render it ineffective or meaningless.").

Second, our interpretation of § 2453(b) is supported by other sections of the VCFA as well as by our previous decisions construing the Act. Section 2453(c) specifically references the Federal Trade Commission Act in instructing the Attorney General to ensure that rules and regulations enacted for the purposes of the Act "shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the federal courts interpreting the Federal Trade Commission Act." 9 V.S.A. § 2453(c). That subsection makes sense only if subsection (b) also means that we are guided by federal court decisions construing the Federal Trade Commission Act and not other federal antitrust laws.

This Court has expressly interpreted § 2453(b) to mean that "[i]n construing the Act, we look to the interpretations accorded similar terms and provisions of the Federal Trade Commission Act . . . ." *Carter*, 168 Vt. at 52, 716 A.2d at 21 (citing 9 V.S.A. § 2453(b)); see also *Russell v. Atkins*, 165 Vt. 176, 182, 679 A.2d 333, 336 (1996); *Int'l Collection Serv., Inc.*, 156 Vt. at 544-45, 594 A.2d at 429; *Poulin*, 147 Vt. at 124-25, 513 A.2d at 1171-72; *Christie v. Dalmig, Inc.*, 136 Vt. 597, 600-01, 396 A.2d 1385, 1387-88 (1979). *Russell* is particularly significant because it is an antitrust case.

Third, the harmonization provision in § 2453(b) does not apply to the VCFA as a whole but only to § 2453(a), which sets out the practices prohibited under the Act. Thus, § 2453(b) is not aimed at defining who can sue under the VCFA, but rather what conduct constitutes a violation of the Act. Nowhere in the Act is there any requirement that the definition of who may sue under the Act must be consistent with the definition of who may sue under federal antitrust law, including under the FTCA. This is logical because the Federal Trade Commission Act does not provide for a private cause of action, see *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 991 (D.C. Cir. 1973), and thus has no bearing on our determination on who can sue under the VCFA. As the Supreme Court of Iowa recently stated:

> The purpose behind both state and federal antitrust law is to apply a uniform standard of conduct so that businesses will know what is acceptable conduct and what is not acceptable conduct. To achieve this uniformity or predictability, we are

not required to define who may sue in our state courts in the same way federal courts have defined who may maintain an action in federal court.

*Comes v. Microsoft Corp.*, 646 N.W.2d 440, 446 (Iowa 2002).

We are not persuaded by Microsoft's additional argument that the Legislature's 2000 creation of a specific remedy for indirect purchasers supports its position. By Act 65 of 2000, the Legislature enacted a specific antitrust remedy provision, 9 V.S.A. § 2465, which allowed "any person" to sue for a violation of an antitrust act including VCFA, limited the damages available in a private action under the VCFA or other state antitrust act and explicitly authorized indirect purchaser antitrust actions based on a violation of § 2453. According to Microsoft, prior to the passage of Act 65, an indirect purchaser such as Elkins must have been barred from bringing suit under the VCFA; otherwise the legislative authorization of such a suit was unnecessary. It argues that allowing plaintiff's suit here would be an impermissible retroactive application of the amendment.

The express legislative purpose behind the amendment instructs otherwise. The amendment language states in relevant part:

In any action for damages or injury sustained as a result of any violation of state antitrust laws, pursuant to section 2453 of this title, the fact that the state, any public agency, political subdivision or any other person has not dealt directly with a defendant shall not bar or otherwise limit recovery. . . .

9 V.S.A. § 2465(b). In its Statement of Intent, the Legislature expressed the purpose behind this amendment: "This act *clarifies* the right of a direct or indirect purchaser to obtain recovery for a violation of the state antitrust law as set forth in chapter 63 of Title 9." 1999, No. 65 (Adj. Sess.), § 1 (emphasis added). Where the Legislature has amended a · prior law and the circumstances clearly indicate clarification to be intended, this Court's construction of a statute must be governed by the disclosed intent of the Legislature. See *Town of Cambridge v. Town of Underhill*, 124 Vt. 237, 241, 204 A.2d 155, 158 (1964); see also *In re Shantee Point, Inc.*, 174 Vt. 248, 258, 811 A.2d 1243, 1251 (2002) (where authorization issue is in litigation, amendment to provide the authorization "can be interpreted as clarifications adopted in light of . . . litigation, rather than substantive changes"). There is nothing to indicate that the Legislature's intended purpose behind the enactment of § 2465(b) was contrary to the statement that

it was a clarification and not necessarily a substantive change in the preexisting law. Therefore, based on the plain meaning of the statute, the expressly stated legislative intent, the remedial purposes of the Act, our previous decisions construing the VCFA, and the express legislative purpose behind the 2000 amendment, we find that Act 65 did not effectuate a change in Vermont law and that an indirect purchaser was entitled to bring a cause of action under the VCFA prior to the 2000 amendment.

We have saved until last the consideration of the myriad of decisions from federal and state courts considering the question before us under the law of the state involved. By way of context, approximately 33 states and the District of Columbia have allowed indirect purchasers to sue for at least some damages, many by statutes equivalent to 9 V.S.A. § 2465 and others by decision. See Note, *Good "Brick" Walls Make Good Neighbors: Should a State Court Certify a Multistate or Nationwide Class of Indirect Purchasers?*, 70 Fordham L. Rev. 2019, 2025-26 (2002); see generally Davis, *Indirect Purchaser Litigation: ARC America's Chickens Come Home to Roost on the Illinois Brick Wall*, 65 Antitrust L.J. 375 (1997). In virtually every state in which there is no explicit statute there has been litigation to resolve the issue. Further, state antitrust claims are often raised in federal antitrust suits so there are some federal decisions.

In support of its construction of § 2453(b) and its effect on the construction of the VCFA as a whole, Microsoft relies on two federal district court cases that involve Vermont law. See *State v. Densmore Brick Co.*, 1980 WL 1846, at *1 (D. Vt. Apr. 10, 1980), and *FTC v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999). In *Densmore*, the State of Vermont sued a woodburning stove distributor for violations of the Sherman Act and the VCFA. In ruling on defendant's summary judgment motion, the court stated the general rule of *Illinois Brick*: that an antitrust plaintiff who was not a direct purchaser could not recover. *Densmore*, 1980 WL 1846, at *4. However, in denying the motion, the court ultimately found no reason to apply the indirect purchaser rule, as plaintiff had alleged a direct relationship. *Id.* Nowhere did the court address whether *Illinois Brick* was controlling law with respect to both federal and state law claims.

The subsequent holding in *Mylan Laboratories* relied upon *Densmore* for the proposition that Vermont case law prohibited indirect purchaser suits under the VCFA. 99 F. Supp. 2d at 10. Not only did the *Mylan* court misinterpret *Densmore*, it failed to do its own independent analysis. We find more accurate the later District of

Maryland decision in *In re Microsoft Corp. Anitrust Litigation*, 127 F. Supp. 2d at 723, 725. In this decision, the court found that it could not determine how this court would resolve the issue of whether an indirect purchaser could sue, labeling Microsoft's argument to the contrary as painting "with too broad a brush." *Id.* at 723. We agree with the court that the issue before us was entirely unresolved until this opinion. We decline to follow *Mylan Laboratories* or hold that *Densmore* is persuasive authority for Microsoft's position.

As the experience of other states in the construction of their antitrust and consumer fraud statutes may offer guidance, see *Int'l Collection Serv., Inc.*, 156 Vt. at 547-49, 594 A.2d at 430-32 (Court looks to other state's jurisprudence for guidance in construing the VCFA), we turn to a brief examination of the cases from other states. Because the statutory schemes vary markedly from state to state, it is helpful to place the decisions in three categories, as follows:

1. *Those Based on State Antitrust Acts* — Unlike Vermont, most states have specific state antitrust acts. These statutes typically have federal harmonization provisions that require the court to look to federal court decisions interpreting any of the federal antitrust laws. Unless there is a specific provision in the state antitrust act allowing indirect purchasers to sue — that is, explicit rejection of the *Illinois Brick* rule — most of the court decisions in these states hold that they are bound to follow *Illinois Brick*. See *Pomerantz v. Microsoft Corp.*, 50 P.3d 929, 932 (Colo. Ct. App. 2002); *Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 596 (Ind. Ct. App. 2002); *Duvall v. Silvers, Asher, Sher & McLaren*, 998 S.W.2d 821, 825 (Mo. Ct. App. 1999); *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 838 (N.H. 2002); *Siena v. Microsoft Corp.*, 796 A.2d 461, 464-65 (R.I. 2002). Those that refuse to follow *Illinois Brick* note that the harmonization provision is not absolute. See *Bunker's Glass Co.*, 47 P.3d at 1126-27; *Comes*, 646 N.W.2d at 446; *Hyde v. Abbott Labs., Inc.*, 473 S.E.2d 680, 686 (N.C. Ct. App. 1996) (federal law is considered "only as persuasive authority").

2. *Those Based on Consumer Protection Acts, or Similar Legislation, in States that also Have Antitrust Acts* — In most of the litigated cases, the plaintiff is precluded from suing under the state antitrust act because of the adoption of the *Illinois Brick* rule and sues instead under a consumer protection act, an unfair trade practices act or the like. The decisions in this category go in both directions depending upon the court's view of the need for consistency in the result under the applicable acts. See *Vacco v. Microsoft Corp.*, 793

A.2d 1048, 1058, 1066 (Conn. 2002) (because of broad harmonization provision, consumer cannot sue under state antitrust act; consumer also cannot sue under Connecticut Unfair Trade Practices Act); *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 109 (Fla. Dist. Ct. App. 1996) (although indirect purchaser cannot sue under state antitrust act, she can sue under the Florida Deceptive and Unfair Trade Practices Act); *Davidson v. Microsoft Corp.*, 792 A.2d 336, 344-45 (Md. Ct. Spec. App. 2002) (indirect purchaser who cannot sue under state antitrust act also cannot sue under Maryland Consumer Protection Act); *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 314 (Mass. 2002) (indirect purchaser who cannot sue under state antitrust act can sue under Massachusetts consumer protection statutes); *Abbott Labs., Inc. v. Segura*, 907 S.W.2d 503, 507 (Tex. 1995) (indirect purchaser who cannot sue under state antitrust act also cannot sue under Texas Deceptive Trade Practices-Consumer Protection Act); see also *Arnold v. Microsoft Corp.*, 2001 WL 1835377, at *4, *7 (Ky. Ct. App. 2001) (indirect purchaser who cannot sue under "Kentucky's version of the Sherman Act" also cannot sue under unfair trade practices provision of the Kentucky Consumer Protection Act); *Blake v. Abbott Labs., Inc.*, 1996 WL 134947, at *5, *7 (Tenn. Ct. App. 1996) (indirect purchaser can sue under both Tennessee Unfair Trade Practices Act, the state antitrust act, and under the Tennessee Consumer Protection Act). In most of these cases, the court does not find *Illinois Brick* to be a direct barrier to suit, or, put another way, it does not find that only direct purchasers can sue under the consumer protection act or similar legislation. *Illinois Brick* is relevant to the outcome only because it may prevent a suit under the state antitrust act.

3. *Those Based on a Consumer Protection Act in a State that Does Not Have an Antitrust Act* — This category includes this case and one decision from another state. In *Blewett v. Abbott Laboratories*, the Washington Court of Appeals ruled that an indirect purchaser could not bring an antitrust action under the Washington Consumer Protection Act because of the broad federal harmonization provision — "the courts [shall] be guided by final decisions of the federal courts ... interpreting the various federal statutes dealing with the same or similar matters." 938 P.2d 842, 845-46 (Wash. Ct. App. 1997).

While there is language in many of the decisions that we might otherwise find helpful, in general the decisions give us little guidance because of the critical differences in their statutory schemes. They

involve either broad harmonization provisions that require the courts to be guided by federal court decisions interpreting any of the federal antitrust acts, including the Clayton Act that is interpreted in *Illinois Brick*, or they involve the interrelationship of a specific antitrust act, with a broad harmonization provision, and a more general consumer protection law. None is persuasive authority for the outcome of this case.

■ In summary, we find no reason to treat antitrust cases differently from other VCFA cases and prohibit indirect purchasers from bringing suit under § 2461(b). Since we have concluded that consumers can generally sue under § 2461(b) even though they are indirect purchasers of a good or service from the defendant, we also hold that they can bring an antitrust case under § 2461(b). The recent addition to the VCFA of § 2465(b), explicitly authorizing indirect purchaser antitrust suits, was not a change in the preexisting law.

*Reversed and remanded.*