EATON, J.
¶ 1. This is an appeal by Margaret Skidmore, claimant, from a finding by the Vermont Employment Security Board that she was monetarily ineligible for unemployment benefits. We conclude that the Department of Labor's Unemployment Insurance and Wage Division (Unemployment Division)[1] properly calculated claimant's benefit year and that claimant is not entitled to additional benefits under the only statutory formula for weekly benefits that applies to her case. Accordingly, we affirm.
¶ 2. The relevant facts found by the Employment Security Board are not at issue. Claimant left work on April 10, 2013, due to an employment-related injury, and has not engaged in full-time employment since then. Because of her injury, claimant received workers' compensation benefits in the form of temporary total disability wage replacement benefits. The temporary total disability benefits aspect of her workers' compensation claim ended on March 21, 2015. Claimant continued to receive workers' compensation benefits but only for the permanent partial impairment resulting from her workplace injury, pursuant to 21 V.S.A. § 648.
¶ 3. On May 18, 2015, claimant called the Unemployment Division to inquire about unemployment compensation benefits. She insists that her call was not intended to establish a claim for unemployment benefits. On the call, claimant provided the Unemployment Division with her Social Security number and other information that the Division considers necessary to open a claim. Based on the call, the Unemployment Division opened a claim that same day and made a finding that claimant was not monetarily eligible for unemployment benefits. Although the Unemployment Division issued a monetary determination, claimant claims she never received it. In December 2015, claimant and her employer reached a settlement agreement-a Form 16 agreement-for the remainder of her claim, which the Department's Workers' Compensation Division approved. See Department of Labor, Form 16 Compromise Agreement (July 2014), http://labor.vermont.gov/wordpress/wp-content/uploads//Form16FillIn.pdf [https://perma.cc/CV5U-88ND]. All of claimant's workers' compensation benefits terminated in December 2015.
¶ 4. After the parties agreed in December 2015 to settle the remainder of claimant's workers' compensation entitlements, she contacted the Unemployment Division on February 2, 2016, in anticipation of her workers' compensation benefits ending.[2] Claimant explained to the Unemployment Division that her telephone call to the Division in May 2015 had not been for purposes of establishing an unemployment benefits claim. After this second call, the Unemployment Division recalculated claimant's monetary eligibility. In its redetermination, the Division did not adjust the date from which it calculated claimant's benefit year-May 18, 2015, when she first called the Unemployment Division-but it *1212 did use a different method for calculating monetary eligibility that is based on wages earned prior to a claimant's work-related injury. Using that method, the Unemployment Division found that claimant was monetarily eligible for unemployment benefits of $419.00 per week for a year from the date she opened her claim. Claimant received weekly unemployment benefit payments until May 14, 2016, for a total payment amount of $5447.
¶ 5. On May 19, 2016, claimant filed a transitional claim[3] for unemployment benefits, in which she sought a determination that she was eligible to receive weekly benefits through May 13, 2017. The Unemployment Division found claimant monetarily ineligible for unemployment compensation for the year starting May 2016 and ending May 2017. Claimant appealed that determination, and following a telephone hearing, the administrative law judge affirmed the Unemployment Division's determination. Claimant then appealed to the Vermont Employment Security Board, arguing that the Unemployment Division erred when it determined that her benefit period began to run on May 18, 2015, and seeking a determination that her benefit period began on February 2, 2016, when she called the Unemployment Division after realizing that her workers' compensation benefits had stopped. The Board affirmed the administrative law judge's decision, noting that if the Board were to grant claimant the relief she sought, she "would not have been monetarily eligible for unemployment benefits under any of the four monetary methods provided by law. Instead of $5447 in unemployment benefits, the claimant would have received nothing." Claimant appealed that determination to this Court, again arguing that she had not intended to open a claim when she called the Unemployment Division in May 2015 and that her benefit period began in February 2016.
¶ 6. This Court's review of decisions by the Employment Security Board is "highly deferential." 863 To Go, Inc. v. Dep't of Labor, 2014 VT 61, ¶ 8, 196 Vt. 551, 99 A.3d 629. We will affirm the Board's factual findings unless they are clearly erroneous and its conclusions if they are reasonably supported by the findings. Id. Additionally, we "generally defer to [the Board's] interpretations of the statutes it is charged with administering." Blue v. Dep't of Labor, 2011 VT 84, ¶ 6, 190 Vt. 228, 27 A.3d 1096.
¶ 7. Vermont's Unemployment Compensation Law "is a remedial law, having benevolent objectives, and must be given liberal construction." Fleece on Earth v. Dep't of Emp't & Training, 2007 VT 29, ¶ 5, 181 Vt. 458, 923 A.2d 594. The law is designed to provide short-term protection for workers who have become unemployed for reasons beyond their control by removing economic disabilities and distress. Id. However, although we interpret the law liberally so as to protect employees, "we will not read provisions into the statute that are not present." See Elkins v. Microsoft Corp., 174 Vt. 328, 331, 817 A.2d 9, 13 (2002).
¶ 8. An unemployed individual is entitled to receive unemployment benefits only if the individual can establish-among other requirements-that he or she: (1) has registered for work at an employment office;
*1213 (2) has made a claim for benefits by following the procedures outlined in 21 V.S.A. § 1346 ; (3) is able to work or, if he or she is unable to work, has provided documentation that his or her inability to work is the product of an illness or disability; (4) has been totally or partially unemployed for a waiting period of a week prior to any week for which the individual claims benefits; and (5) qualifies for a weekly benefits in accordance with 21 V.S.A. § 1338. See 21 V.S.A. § 1343(a). Under 21 V.S.A. § 1346(a), "[c]laims for benefits shall be made in accordance with such regulations as the Board may prescribe. Each employer shall post and maintain printed statements of such regulations...." Pursuant to that section, employers must post an Unemployment Benefits Poster, which instructs employees to call the Department of Labor's Unemployment Insurance initial claims line. Vt. Dep't of Labor, Form A24-Unemployment Insurance, http://labor.vermont.gov/wordpress/wp-content/uploads/A24-Unemployment-Insurance-Poster.pdf [https://perma.cc/3LKJ-GUKX]; see also Vt. Dep't of Labor, Employer Information Manual 37, http://labor.vermont.gov/wordpress/wp-content/uploads/Employer-Information-Manual.pdf [https://perma.cc/RZU5-EUYV]. Neither party to this appeal disputes that the employer here complied with § 1346.
¶ 9. When an individual calls the initial claims line and provides the Unemployment Division with responses to a sequence of requests, including a request for the individual's Social Security number, the Unemployment Division registers the individual's claim as filed and the individual is considered a claimant.[4] See Vt. Dep't of Labor, Employer Information Manual at 37; Rule of the Board 10.A ("An individual seeking to claim benefits for a week of total or partial unemployment shall contact, by telephone or other approved method, the Unemployment Insurance Claims Center to file a new, additional or reopened claim for benefits."). Once a claimant files a claim, the Unemployment Division mails that person an information packet that outlines the claimant's rights and responsibilities. Vt. Dep't of Labor, Employer Information Manual at 37; see also Vt. Dep't of Labor, Claimant Handbook: A Guide to Unemployment Insurance in Vermont (Feb. 2017), http://labor.vermont.gov/wordpress/wp-content/uploads/B-11-Claimant-Handbook.pdf [https://perma.cc/Y5A4-MED9]. Additionally, once a claim is filed, it cannot be withdrawn. Rule of the Board 10.A. And in order to receive benefits, a claimant must timely file a claim with the Unemployment Division each week. See Vt. Dep't of Labor, Claimant Handbook at 3.
¶ 10. When the Unemployment Division receives a request for benefits, it makes an initial monetary determination in accordance with the statutory definitions of "base period" and "valid claim." See 21 V.S.A. §§ 1301(17), (23) ; 1343(d). As the *1214 Board explained in its decision in this case, there are four methods-monetary methods one through four-for calculating monetary eligibility, all of which are "predicated on a claimant's attachment to the labor force."
¶ 11. In order to establish eligibility, a claimant filing in 2015 had to satisfy two initial requirements: that he or she earned (1) at least $2386 in wages in any quarter,[5] and (2) at least 40 percent of his or her maximum quarterly wages in the remaining base period quarters. Id. § 1338(d)(1), (h). The different monetary methods vary by how they calculate a claimant's "base period," or the time period from which a claimant's weekly entitlement is measured. See id. § 1301(17).
¶ 12. Under monetary method one, the base period is "the first four of the most recently completed five calendar quarters immediately preceding the first day of a claimant's benefit year." Id. § 1301(17)(B). Under monetary method two, the base period is "the last four completed calendar quarters immediately preceding the first day of the claimant's benefit year." Id. Under monetary method three, which applies to "any individual who fails to qualify for benefits under [monetary methods one and two]," the base period is "the last three completed calendar quarters and all wages paid prior to the effective date of the claimant's initial claim in the calendar quarter in which the initial claim was filed." Id. § 1301(17)(C). And finally, monetary method four, which is triggered "only if, at the time the claimant files the initial claim, he or she was not monetarily eligible for benefits under [methods one through three]," provides that "any otherwise eligible claimant who was separated from employment due to an accident or injury resulting in a temporary total disability for which the claimant received workers' compensation benefits" is eligible for "benefits which would have been available at the time of separation from employment."Id. § 1343(d). In other words, under monetary method four, the Unemployment Division uses the date of separation due to the injury as the effective date of the initial claim. See id.
¶ 13. Here, the Unemployment Division initially considered monetary methods one through three and concluded that, under each of those eligibility calculations, claimant was ineligible for unemployment benefits.[6] Claimant does not dispute that she was ineligible for benefits under these methods. However, when claimant sought to validate her claim by filing for benefits in February 2016, the Unemployment Division reviewed her file and determined that she was in fact monetarily eligible under *1215 monetary method four. That method requires that a claim for benefits be made within six months following the termination of a claimant's period of temporary total disability. 21 V.S.A. § 1343(d) ("Payment of benefits for any week under this section shall be made only if ... the claim is filed within six months after the termination of the period of temporary total disability."). The Board found, and neither party disputes, that claimant's temporary total disability benefits terminated on March 20, 2015. Accordingly, under monetary method four, claimant had six months from March 2015, until September 2015, to file a claim. See id.
¶ 14. Thus, as the Board noted in its decision below, even if the Unemployment Division had the legal authority to grant claimant the relief she seeks on appeal-a determination that her May 2015 call to the Unemployment Division did not constitute a claim for benefits and instead establishing a claim filing date of February 2, 2016-she "would not have been monetarily eligible for unemployment benefits under any of the four monetary methods provided by law." See 21 V.S.A. §§ 1301(17)(B), 1343(d). In other words, had the Board calculated claimant's benefit period according to the date on which she argues she first intended to open a claim, "[i]nstead of $5447.00 in unemployment benefits, [she] would have received nothing" because February 2, 2016 was more than six months after March 20, 2015.
¶ 15. Although the Unemployment Compensation Act "is a remedial law, having benevolent objectives, and must be given liberal construction," Fleece on Earth, 2007 VT 29, ¶ 5, 923 A.2d 594, "we will not read provisions into the statute that are not present." See Elkins, 174 Vt. at 331, 817 A.2d at 13. The Unemployment Division applied the law to claimant's situation according to its plain language, and we can find no error in the Board's determination that the Unemployment Division properly calculated her benefit year. Claimant received benefits during the benefit year for which she made weekly claims. She has earned no wages during the base period of a new benefit year and therefore is monetarily ineligible for unemployment compensation for an additional benefit year.
Affirmed.

Because claimant dealt with the Department of Labor concerning both her workers' compensation and unemployment benefits claims, we refer to the specific divisions of the Department for clarity.

According to claimant, she called the Department to find out what forms she needed to file in order to receive unemployment benefits once her workers' compensation benefits terminated. She was given another number to call, which apparently was the number for the Unemployment Division.

A transitional claim is "an application for determination of continued eligibility for benefits which initiates the establishment of a new benefit year without interruption in the payment of benefits." Rules of the Vt. Emp't Sec'y Bd. 2.K, Code of Vt. Rules 24 005 001, http://www.lexisnexis.com/hottopics/codeofvtrules/ [https://perma.cc/4YZV-QN32] [hereinafter Rules of the Board].

Although neither party provided record evidence about the contents of the initial "claim" phone call, the Department represented in its briefing before this Court that opening a claim requires the caller to answer "some 46 separate questions." In its brief, the Department has accepted claimant's word that she called on May 18, 2015, and it represents that it would have followed its standard procedure for opening a claim. We note that the claim process is unnecessarily complicated, with apparently no system in place to later confirm or deny claimant's representations or that it advised her of the consequences triggered by the phone call. Given the ultimate importance of the date on which claimant called the Department, and given the complexity of the claims-filing process, the Department must provide more substantial guidance for claimants about how to maximize their unemployment benefits, including by alerting claimants that by placing a call to the Unemployment Division, they may initiate a benefit year.

The statute provides that the precise dollar amount for determining the minimum quarterly wage requirement is based on the state minimum wage and "shall be adjusted by a percentage increase equal to the percentage increase, if any, in the State minimum wage effective during the prior calendar year." 21 V.S.A. § 1338(h). According to the Board, that number for 2015 was $2386.

Under monetary method one, claimant's base period would have been the four calendar quarters of 2014. Because she had no significant wages between the time of her injury in April 2013 and the end of 2014, she could not satisfy the second statutory requirement-forty percent of her maximum wages in the base period-under monetary method one. See 21 V.S.A. § 1301(17)(B). Under monetary method two, claimant's base period would have been the last four calendar quarters at the time of filing, id., but she also had insufficient income during that year-May 2014 to May 2015-to satisfy the second statutory requirement. And the same is true for monetary method three: her base period would have been the last two quarters of 2014 and the first quarter of 2015 plus any wages earned in the second quarter of 2015, but she had insufficient income in that time to satisfy the statutory requirement. Id.