NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 66

No. 2017-364

| Jason Lillie | Supreme Court |
|---|---|
| | On Appeal from |
| v. | Employment Security Board |
| Department of Labor | April Term, 2018 |

Michael Harrington, Chair

Jason R. Lillie, Pro Se, Bennington, Plaintiff-Appellant.

Dirk Anderson, Montpelier, for Defendant-Appellee.

PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.    **EATON, J.**  Jason Lillie appeals the Employment Security Board's denial of his claim for unemployment benefits.  We affirm.

¶ 2.    In July 2014, Lillie was an employee of Amerigas Propane, Inc. and suffered an injury while working.  He reported the injury to his employer, which in turn reported it to its worker's compensation insurer.  He sought medical attention for his injury shortly after being hurt but was able to continue working for several weeks, most of it on modified or light duty.  The record is unclear whether the compensation insurer paid for the medical treatment initially.  In October, Amerigas fired Lillie for an alleged safety violation.  A few days later, Lillie's doctor indicated he was medically unable to work.  Lillie expressed concern that he was ineligible for unemployment benefits because he was not able to work but was told he must apply in order to receive economic benefits.

¶ 3.     Lillie then sought workers' compensation temporary disability benefits, which were initially denied by the insurer.  Without any income or compensation disability benefits for several weeks, Lillie sought economic assistance from the Vermont Economic Services Division of the Department for Children and Families.  Lillie was told by Economic Services that in order to be eligible for economic assistance he would have to file for unemployment benefits, even if he felt he would not qualify for them.

¶ 4.     With his workers' compensation claim still in dispute, and based upon the information he had received from Economic Services, Lillie filed a claim for unemployment benefits with the Unemployment Insurance Division of the Department of Labor on December 1, 2014.  The filing of a claim for benefits triggers the establishment of a benefit year.  21 V.S.A. § 1338(d)(1)(C).  The claim also triggers a determination of whether the claimant is monetarily eligible for benefits for the benefit year using one of four statutory methods to establish a base period, which we recently explained in <u>Skidmore v. Department of Labor</u>, 2017 VT 65, ¶ 10, __ Vt. __, 172 A.3d 1210.  Unless a claimant has earned sufficient wages during a "base period," using one of the statutory methods to calculate it, the claimant is not monetarily eligible to receive unemployment benefits.

¶ 5.     Applying the statutory formula to calculate the base period as set forth in 21 V.S.A. § 1301(17)(B) and using the wages Lillie had earned at Amerigas between July 1, 2013 and the end of June 2014, the Unemployment Division found him to be monetarily eligible for unemployment benefits when he sought them in December 2014.  Monetary eligibility is merely the first step in determining whether a claimant is entitled to unemployment benefits.  If a claimant satisfies the monetary eligibility criteria, there are other requirements that must be met as conditions to the receipt of unemployment benefits.  These are set forth in 21 V.S.A. § 1343.

¶ 6.     One of the conditions in 21 V.S.A. § 1343 is a requirement that a claimant be able to work and available for work in order to receive unemployment benefits.  21 V.S.A. § 1343(a)(3).  While he had the necessary base period wages to make him monetarily eligible for benefits, Lillie

2

was not able to work and available for work, as required by 21 V.S.A. § 1343(a)(3), because he was medically unable to work. He was, therefore, denied unemployment compensation on that basis. He continued to make weekly claims for unemployment benefits for six weeks after December 2014 while his workers' compensation benefits were in dispute. Each claim was denied because he was not able and available to work.

¶ 7. In March 2015, Lillie's workers' compensation claim was accepted and temporary disability benefits were paid to him; the payments were retroactive to the time he left work in October 2014. Lillie ceased making claims for unemployment benefits and continued to receive temporary total disability benefits until he reached a medical end result in early 2017. At the end of his temporary total disability, and because he was then able and available to work, Lillie filed another claim for unemployment benefits on May 18, 2017.

¶ 8. When a worker reaches the end of temporary total workers' compensation benefits and seeks unemployment benefits, the Unemployment Insurance Division usually determines his or her monetary eligibility for unemployment benefits using "Method Four" pursuant to 21 V.S.A. § 1343(d), which allows eligibility for unemployment benefits to be calculated based on the employee's wages earned in the period prior to leaving employment due to injury. Here, Method Four could not be used because Lillie's pre-disability wages had already been used to meet his monetary eligibility requirement for the unsuccessful unemployment claims Lillie had filed beginning in December 2014, which had established a benefit year for those claims even though he did not get any unemployment benefits at that time for other reasons. Id. § 1301(16)(A). As a result, Lillie was required by statute to earn four times his previously weekly benefit subsequent to his most recent benefit year in order to be monetarily eligible for benefits in a new benefit year. Id. § 1338(d)(1)(C). Accordingly, Lillie was found to be monetarily ineligible for benefits because he did not earn any wages subsequent to the prior benefit year he had established in 2014. Lillie appealed the denial of benefits by the claims handler to the appeals referee, who affirmed the

3

decision. Lillie then appealed to the Employment Security Division, which also affirmed the denial based upon monetary ineligibility. This appeal followed.

¶ 9. Lillie challenges the most recent denial of benefits by the Unemployment Division, caused solely by the unsuccessful filing of unemployment claims at an earlier time. The unemployment statutes contemplate that an injured worker might not be able to find a job at the time his or her temporary total workers' compensation benefits end. Accordingly, Method Four delineates the process for calculating the base period for monetary eligibility in those cases. Id. § 1343(d). Method Four enables the injured worker to meet monetary eligibility requirements following a period of temporary disability by using the pre-disability wages. In this case, however, the Unemployment Division had already used those wages in the calculation of monetary eligibility for the 2014 benefit year. The impact of those weekly unemployment benefit claims in 2014 was to establish a benefit year, triggering the determination of monetary eligibility through the establishment of a base period. The wages Lillie earned prior to his disability from injury were used to satisfy this requirement. The unemployment benefits statutes, as the appeals referee found, expressly prohibit the reuse of wages used to meet a base period requirement for a prior benefit year. Id. § 1301(17)(D). Had Lillie not made the unemployment claims in 2014, his pre-disability wages would have been available to meet Method Four's monetary eligibility requirements, pursuant to 21 V.S.A. § 1343(d), for the 2017 claims. Because those wages had been used in connection with the earlier benefit year, they could not be used again for the 2017 unemployment claim. To establish monetary eligibility for a new benefit year, Lillie would have to establish that he had weekly earnings in the amount required by statute subsequent to his previous benefit year. Id. § 1338(d)(1). Because he had no subsequent earnings, Lillie could not meet the statutory requirement. The Employment Security Division's affirmance of the appeals referee's denial of benefits was correct.

¶ 10. With respect to the handling of the multiple weekly claims for unemployment benefits in 2014 and 2015, and the single claim in 2017, Lillie has not shown any error on the part

4

of the Unemployment Division in the handling of any of the claims. The record does not show that the Unemployment Division was asked for, or gave, any explanation of the potential impact Lillie's 2014 claims would have on a later claim if he did not return to work in the interim. The Unemployment Division applied the law properly, and we are not at liberty to rewrite the applicable statutes to obtain a different outcome.

¶ 11. At the same time, Lillie's considerable frustration at being crushed between two boxcars of government bureaucracy is understandable. The record does not demonstrate that any information provided by Economic Services concerning his need to apply for unemployment benefits to qualify for economic assistance was incorrect.[1] But it seems unlikely that Lillie understood that the resulting impact of asserting weekly claims for unemployment benefits at a time when he knew he was unable to work would be to disqualify Lillie for unemployment benefits at a later time. At the very least, it is unreasonable to expect someone unfamiliar with these programs to successfully negotiate the myriad of requirements involved in the interplay between workers' compensation benefits, unemployment benefits, and assistance through Economic Services. We doubt that Lillie is the first injured worker to seek unemployment benefits in order to qualify for assistance through Economic Services. We also doubt that he will be the last.

¶ 12. In the past we have been critical of the Department of Labor for not providing sufficient guidance to claimants that filing for unemployment benefits may trigger a benefit year. Skidmore, 2017 VT 65, ¶ 9 n.4. This case is somewhat different than Skidmore because, unlike in that case, Lillie knew he was filing a claim for unemployment benefits in December 2014. Whether additional guidance by Economic Services before advising him to apply for unemployment benefits or by the Unemployment Division at the time Lillie first called to make an unemployment claim would have made any difference here is speculative. At a minimum,

---

[1] The record does not indicate whether the requirement that Lillie apply for unemployment benefits was compelled by statute or regulation versus a policy judgment by the Division in administering its programs. Nor is there any indication that the requirement was wrongly imposed.

5

however, coordination of the important information between the Unemployment Division and Economic Services concerning monetary eligibility, the establishment of a benefit year, and the use of wages prior to disability in connection therewith in the case of a worker injured on the job may have avoided this quagmire. Following the advice given by Economic Services, which we do not doubt was provided in good faith to Lillie, resulted in the unintended consequence of his loss of unemployment benefits once he regained his ability to work in 2017.

¶ 13. It is not too much to ask that a benefit claimant be fully informed of the consequences that one claim for benefits has on other very foreseeable benefit claims in the case of a worker injured on the job. In the worst case, it would be far better that an injured worker receives that information twice, rather than not at all, as apparently was the unfortunate case here. Furthermore, a protocol requiring communication between agencies that are both working with a client seeking economic assistance would likely be of assistance in resolving the confusion, such as existed in this case.[2]

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[2] At oral argument, counsel for the Department of Labor indicated the Department was planning to contact the Economic Services Division to discuss protocols for situations such as this one. We applaud that effort.