2006 VT 136

# Samantha Sawyer v. Bruce Robson and Antonio Latona

[915 A.2d 1298]

No. 05-372

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess[1], JJ.**

Opinion Filed December 22, 2006

---
[1] Justice Burgess sat for oral argument but did not participate in this decision.

*Jean L. Murray, Vermont Legal Aid, Inc.,* Montpelier, for Plaintiff-Appellee/Cross-Appellant.

*Brice C. Simon* of *Olson & Simon, PLC,* Stowe, for Defendants-Appellants.

¶ 1. **Skoglund, J.** Landlords Bruce Robson and Antonio Latona appeal the superior court's decision granting tenant Samantha Sawyer's motion for a new trial based on the court's conclusion that the jury had returned an inconsistent verdict. Tenant cross-appeals the superior court's decision granting landlords' motion to dismiss tenant's claim asserted under the Consumer Fraud Act and its denial of her motion for a directed verdict. We affirm in part and reverse in part.

¶ 2. The following facts are undisputed. In 2003, Latona purchased a mobile home for $900 and placed it on Robson's land. Latona began renting the mobile home to tenant on September 1, 2004, for $500 per month. The rental agreement provided that if tenant made twelve on-time payments (i.e., paid a total of $6000 in rent), she would own the home. By January 2005, tenant had paid rent late at least once. In February 2005, Latona and tenant argued about her rent payments, and Latona threatened eviction. In March 2005, Robson — who lived next door to the property on which the mobile home was located — told Latona that tenant had not been at the property on a consistent basis for approximately one month. Latona made an effort to telephone tenant but was not able to reach her. Robson and Latona made a plan for Latona to go to the mobile home and remove tenant's belongings. On March 23, 2005, Latona went to tenant's property and entered the mobile home. Latona testified that when he entered the mobile home, a window was broken and all of tenant's electronic equipment was missing. Latona removed tenant's remaining belongings and changed the lock. He placed those belongings in storage. Tenant returned to the mobile home on March 26, 2005, and contacted the police after seeing that her belongings were missing. After tenant made various efforts to

recover her belongings, Latona gave tenant access to the storage unit on April 13, 2005.

¶ 3. Tenant filed this action, alleging illegal eviction, breach of the covenant of quiet enjoyment, intentional infliction of emotional distress, breach of the warranty of habitability, violation of the Consumer Fraud Act,[2] and violation of the Landlord-Tenant Act.[3] A jury trial was held. At trial, tenant presented evidence of her agreements with Latona and Robson; her rent payments (tenant admitted that some payments were late); the extent to which she was present at or absent from the mobile home; the state of the mobile home and her possessions on the last day she was on the premises before Latona entered; and the state of the mobile home and her possessions after Latona had been inside. Tenant presented the testimony of the police officer that tenant had contacted after she discovered that her possessions were no longer in the mobile home. The police officer described his conversation with Robson about tenant recovering her belongings, and the fact that tenant had to obtain a court order before she was able to access her belongings.

¶ 4. At the close of tenant's evidence, landlords presented a number of motions, including for judgment as a matter of law on tenant's claim under the Consumer Fraud Act. The superior court granted judgment in favor of landlords on the claim, concluding that, although the CFA can be applied to landlord-tenant transactions generally, tenant had nonetheless offered no evidence that landlords were "covered persons" under the Act. The superior court determined that tenant was required to prove that landlords were sellers as defined under the CFA — in this case, persons regularly and principally engaged in the business of renting property to consumers — and had not presented any evidence in support of this requirement. See 9 V.S.A. § 2451a(c) (defining term "seller" for purposes of CFA).

¶ 5. Landlords next presented their evidence, which tracked the position set forth in their opening statement. There they argued that they had not violated landlord-tenant law because plaintiff had already abandoned the mobile home at the time Latona entered and removed her belongings. Landlords presented evidence that tenant was gone from the mobile home for thirty-two to thirty-three days in a row;

---

[2] Specifically, 9 V.S.A. § 2453(a) prohibits "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce."

[3] Specifically, 9 V.S.A. § 4463 prohibits a landlord from denying a tenant access to and possession of the leased premises and tenant's personal property in the absence of judicial process.

Latona tried to reach her by telephone at the mobile home but was unable to; Latona went to the home with the intention and plan of removing her belongings, which he had discussed with Robson; Latona found the window broken and tenant's electronic equipment missing when he entered the mobile home; and he removed tenant's other personal belongings, placed them in storage, and changed the lock on the mobile home. With regard to these actions, Latona testified, "I was advised that it was an abandoned dwelling, and I was doing what the law states in the book under abandoned dwellings." Landlords also presented the theory that they did not deny plaintiff access to certain of her possessions — i.e., valuable items such as televisions and a DVD player — because those items had been stolen by whoever had broken into the trailer by breaking the window. Landlords did not deny that they had changed the lock on the mobile home and that they had taken tenant's personal belongings and put them in storage; nor did they contest that tenant had to obtain a court order to access her belongings in storage. In fact, Robson conceded that he told tenant that she would have to get a lawyer to get her things back.

¶ 6. At the close of landlords' evidence, tenant moved for a directed verdict on landlords' defense that tenant had abandoned the home such that landlords were permitted to enter it without her consent. The superior court denied the motion, concluding that the evidence was mixed on the point and that a reasonable jury could find in favor of either party on the issue. The jury was charged and given a set of interrogatories drafted by the parties through which to render the verdict.

¶ 7. After deliberations, the jury returned a verdict in favor of landlords. On the special verdict form returned by the jury, however, the jury indicated that while it did not find that landlords had illegally evicted tenant, neither did they find that tenant had abandoned the mobile home such that entrance onto the premises by landlords would be permissible. Tenant moved for a new trial, arguing that it was inconsistent for the jury to find for landlords when the jury had also rejected landlords' only defense: the allegation that tenant had abandoned the property before Latona entered the mobile home on March 23, 2005. The superior court granted the motion, applying Vermont Rule of Civil Procedure 49(b), which permits the court to order a new trial when answers to interrogatories in a special verdict form create an inconsistency. Landlords filed this appeal.

## I.

■ ¶ 8. On appeal, landlords argue that the jury's answers to the special interrogatories can be reconciled and that the superior court erred in granting a new trial. We review the superior court's decision to grant a new trial under Rule 49(b) for an abuse of discretion. *Johnson v. United Parcel Service*, 2006 VT 57, ¶ 10, 180 Vt. 513, 904 A.2d 1089 (mem.).[4] The parties' positions can be summarized as follows. Tenant argues — and the superior court agreed — that, because landlords' only defense against the claim of illegal eviction was their assertion that tenant had abandoned her property prior to March 23, 2005, it was inconsistent for the jury to find that tenant had not abandoned the property and also that landlords were not liable for illegal eviction. Landlords argue that the jury could have found that the claim of illegal eviction failed for any number of reasons, including a failure of proof on the elements of the claim, and that the jury's verdict should be accepted as submitted.

■ ¶ 9. The jury was instructed as follows on the law of illegal eviction and the defense of abandonment:[5]

> Vermont law prohibits a landlord from directly or indirectly denying a tenant access to any possession of the tenant['s] rented or leased premises or property, except through proper judicial process.
>
> . . . .
>
> [I]n some instances, a landlord may enter a leased premises when three criteria are met showing abandonment by the tenant.
>
> Number one, if there are circumstances that would lead a reasonable person to believe that the leased premises are no

---

[4] Landlords argue that our review is de novo, citing *Prouty v. Manchester Motors, Inc.*, 143 Vt. 449, 453, 470 A.2d 1152, 1154 (1983). The cited passage, however, is dicta. Furthermore, it is unclear whether the statement in *Prouty* that "the issue in this case is one of law" refers to the trial court's decision denying a new trial or its decision entering judgment for the plaintiffs. *Johnson* is the more recent and more clear precedent, and is consistent with our application of the abuse of discretion standard to the decision whether to grant a new trial under Rule 59.

[5] Neither tenant nor landlords objected to the jury instructions at the time or challenge them on appeal. Further, the instructions accurately state the law as codified in 9 V.S.A. §§ 4462-4463.

longer occupied by the tenant[] as his or her full-time residence.

And, number two, the rent is not current.

And, number three, the landlord has made reasonable efforts to ascertain the tenant's intention.

. . . .

If all three of the criteria have been proven by the evidence in this case, then you may find that the tenant did legally abandon the premises. If, however, any one or two of these factors have not been proven, then you may not find that the plaintiff abandoned this trailer.

. . . .

If, however, you find the abandonment criteria have not been met and the defendants denied plaintiff access to the mobile home or her property therein, then you may find that the defendants illegally evicted the plaintiff, and they may be liable for damages incurred as a result of the illegal eviction.

Landlords argue that the jury could have found, as an alternative, that tenant failed to prove the positive elements of her claim — in particular, that landlords denied her access to the mobile home or her possessions. This theory is simply untenable in light of landlords' position at trial and the state of the evidence. In short, landlords conceded that they entered tenant's home, removed her personal belongings, placed them in storage until tenant obtained a court order, and changed the locks on the mobile home. Given these admissions, the jury's findings that tenant had not abandoned the property but also that landlords had not committed an illegal eviction are inconsistent, and the superior court did not abuse its discretion in ordering a new trial. See V.R.C.P. 49(b) (requiring either a new trial or further deliberation by jury where answers to special verdict interrogatories are inconsistent); *Prouty*, 143 Vt. at 454, 470 A.2d at 1155 (noting that Rule 49(b) provides trial court with explicit options when jury returns inconsistent verdict).

II.

¶ 10. In her cross-appeal, tenant argues that the superior court erred in granting landlords' motion for judgment as a matter of law on

tenant's claim under the Vermont Consumer Fraud Act. Tenant argued that landlords had acted deceptively by structuring the rental as an installment purchase of the property "as is," thus relieving landlords of their duties to maintain a habitable premises. Tenant also argued that landlords generally abused and harassed her. In ruling on the motion, the superior court acknowledged that a jury could find that landlords had engaged in deceptive practices, and that the Act applied to landlord-tenant transactions as a general proposition.[6] See *L'Esperance v. Benware*, 2003 VT 43, ¶ 14, 175 Vt. 292, 830 A.2d 675 (recognizing that landlord may be held liable under Vermont Consumer Fraud Act). Nonetheless, the court concluded that tenant was required to prove that landlords were "sellers" as defined by the Act: persons "regularly and principally engaged in a business of selling goods or services to consumers." 9 V.S.A. § 2451a(c). The superior court further concluded that there was no evidence upon which a reasonable jury could conclude that tenant had proved this element of her claim. The court's interpretation of the CFA is a legal question which we review de novo. *Human Rights Comm'n v. Benevolent & Protective Order of Elks*, 2003 VT 104, ¶ 13, 176 Vt. 125, 839 A.2d 576.

¶ 11. The superior court's reasoning is undermined by the plain language of the CFA, as well as our case law interpreting the Act. The "central provision" of the Act makes "'[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, . . . unlawful.'" *Elkins v. Microsoft Corp.*, 174 Vt. 328, 330, 817 A.2d 9, 12 (2002) (quoting 9 V.S.A. § 2453(a)). The CFA allows this prohibition to be enforced as follows:

> Any consumer who . . . sustains damages or injury as a re-
> sult of any false or fraudulent representations or practices
> prohibited by section 2453 of this title . . . may sue for appro-
> priate equitable relief and may sue and recover from the

---

[6] The superior court did not analyze or rule on whether landlords had engaged in deceptive practices or whether any such practices occurred "in commerce" under the CFA. Rather, the court noted in passing that there was some evidence of deceptive practices, but ultimately focused on the definition of "seller" under the statute as the basis for granting summary judgment on the claim. Because the superior court did not address the other elements of a CFA claim, we need not decide today how these elements should be applied in the landlord-tenant context. Our holding is limited to the conclusion that a plaintiff need not prove that a defendant is a "seller" to maintain a claim under the CFA.

seller, solicitor or other violator the amount of his damages
. . . .

9 V.S.A. § 2461(b).[7] It is true that, while the CFA defines the term "seller," it does not define the terms "solicitor" or "other violator." *Carter v. Gugliuzzi*, 168 Vt. 48, 52, 716 A.2d 17, 21 (1998). The significance of this omission, however, is simply that we afford those undefined terms their plain meaning.

¶ 12. This is the approach we took in *Elkins*. There we held that "other violator" was "a broad term" encompassing defendants in that case who were not "sellers" of "goods or services" under the statutory definitions of those terms. 174 Vt. at 331-32, 817 A.2d at 13. The specific issue in that case was whether a consumer could sue an "indirect seller" under the CFA — for example, the manufacturer of a product that was sold wholesale to a third party who then sold the product to the consumer. We determined that under the plain meaning of the statutory language there was no privity requirement — that is, no requirement that the defendant sold goods or services directly to the plaintiff. *Id.* We concluded that attributing a broad scope to "[t]he plain meaning of the ['other violator'] language" was supported by "the express legislative intent behind the statute to 'protect the public' against 'unfair or deceptive acts or practices' and to 'encourage fair and honest competition.'" *Id.* at 331, 817 A.2d at 13 (quoting 9 V.S.A. § 2451) (further citations omitted). The plain meaning of "other violator" is anyone engaged in an unfair or deceptive commercial practice in violation of the CFA's prohibition on such activity. Stated another way, our focus in determining applicability of the CFA is the nature of the alleged violator's activities, not whether the violator falls into a defined statutory category.

---

[7] The legislative history of the private-enforcement provision demonstrates that the scope of potential plaintiffs and defendants under the CFA was deliberately broadened over time. Originally, the CFA's prohibitions could be enforced only by the Attorney General. See 1967, No. 132, § 1. In 1969, however, the Act was amended to permit a private cause of action, thus allowing individual consumers to sue when they are damaged by deceptive practices. See 1969, No. 45, § 7. The language was further broadened in 1973, when the private enforcement provision — which originally limited the range of possible defendants to a "seller" or "solicitor" — was amended to allow consumers to sue "other violators" as well. See 1973, No. 110, § 5.

¶ 13. This interpretation is supported by the express purpose of the CFA: "to 'protect the public' against 'unfair or deceptive acts or practices' and to 'encourage fair and honest competition.'" *Id.* at 331, 817 A.2d at 13 (quoting 9 V.S.A. § 2451) (further citations omitted). "In light of this purpose, this Court has repeatedly held that the VCFA is 'remedial in nature' and therefore must be construed 'liberally so as to furnish all the remedy and all the purposes intended.'" *Id.* (citations omitted). As we emphasized in *Elkins*, "[t]he Legislature clearly intended the VCFA to have as broad a reach as possible in order to best protect consumers against unfair trade practices." *Id.* Construing the CFA liberally, as we must, there is no basis for categorically excluding landlords in this case from the range of potential defendants under the CFA, given the court's conclusion that there was evidence landlords had engaged in unfair and deceptive commercial practices. The superior court should have permitted the claim to proceed.

### III.

¶ 14. Finally, tenant also challenges the superior court's decision not to grant a directed verdict on the issue of abandonment. Specifically, tenant asserts that even if landlords presented evidence that she no longer occupied that mobile home as a full-time residence and that her rent payments were not current, landlords did not provide adequate support for the third element of the abandonment defense: that they made a reasonable effort to determine tenant's intentions before entering the mobile home. See 9 V.S.A. § 4462(a) (setting forth elements of defense of abandonment). In reviewing a trial court's decision on a motion for directed verdict, we view the evidence in the light most favorable to the nonmoving party and exclude the effect of all modifying evidence. *Hunter Broad., Inc. v. City of Burlington*, 164 Vt. 391, 393, 670 A.2d 836, 838 (1995). At trial, landlords testified that they attempted to reach tenant by telephone before entering the mobile home. Viewing this evidence in the light most favorable to landlords, we cannot conclude that "there is no legally sufficient evidentiary basis for a reasonable jury to find for [landlords] on that issue." V.R.C.P. 50(a)(1).

*Affirmed in part, reversed in part, and remanded for further proceedings consistent with this decision.*