Sawyer v. Robson (2005-372)

2006 VT 136

[Filed 22-Dec-2006]


 NOTICE: This opinion is subject to motions for reargument under V.R.A.P.
 40 as well as formal revision before publication in the Vermont Reports. 
 Readers are requested to notify the Reporter of Decisions, Vermont Supreme
 Court, 109 State Street, Montpelier, Vermont 05609-0801 of any errors in
 order that corrections may be made before this opinion goes to press.


 2006 VT 136

 No. 2005-372


 Samantha Sawyer Supreme Court

 On Appeal from
 v. Lamoille Superior Court


 Bruce Robson and Antonio Latona May Term, 2006


 Howard E. Van Benthuysen, J.

 Jean L. Murray, Vermont Legal Aid, Inc., Montpelier, for
 Plaintiff-Appellee/Cross-Appellant.

 Brice C. Simon of Olson & Simon, PLC, Stowe, for Defendants-Appellants. 


 PRESENT: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess (FN1), JJ.



 ¶ 1. SKOGLUND, J. Landlords Bruce Robson and Antonio Latona
 appeal the superior court's decision granting tenant Samantha Sawyer's
 motion for a new trial based on the court's conclusion that the jury had
 returned an inconsistent verdict. Tenant cross-appeals the superior
 court's decision granting landlords' motion to dismiss tenant's claim
 asserted under the Consumer Fraud Act and its denial of her motion for a
 directed verdict. We affirm in part and reverse in part.
 
 ¶ 2. The following facts are undisputed. In 2003, Latona
 purchased a mobile home for $900 and placed it on Robson's land. Latona
 began renting the mobile home to tenant on September 1, 2004, for $500 per
 month. The rental agreement provided that if tenant made twelve on-time
 payments (i.e., paid a total of $6000 in rent), she would own the home. By
 January 2005, tenant had paid rent late at least once. In February 2005,
 Latona and tenant argued about her rent payments, and Latona threatened
 eviction. In March 2005, Robson-who lived next door to the property on
 which the mobile home was located-told Latona that tenant had not been at
 the property on a consistent basis for approximately one month. Latona
 made an effort to telephone tenant but was not able to reach her. Robson
 and Latona made a plan for Latona to go to the mobile home and remove
 tenant's belongings. On March 23, 2005, Latona went to tenant's property
 and entered the mobile home. Latona testified that when he entered the
 mobile home, a window was broken and all of tenant's electronic equipment
 was missing. Latona removed tenant's remaining belongings and changed the
 lock. He placed those belongings in storage. Tenant returned to the
 mobile home on March 26, 2005, and contacted the police after seeing that
 her belongings were missing. After tenant made various efforts to recover
 her belongings, Latona gave tenant access to the storage unit on April 13,
 2005.
 
 ¶ 3. Tenant filed this action, alleging illegal eviction, breach
 of the covenant of quiet enjoyment, intentional infliction of emotional
 distress, breach of the warranty of habitability, violation of the Consumer
 Fraud Act (FN2), and violation of the Landlord-Tenant Act.(FN3) A jury
 trial was held. At trial, tenant presented evidence of her agreements with
 Latona and Robson; her rent payments (tenant admitted that some payments
 were late); the extent to which she was present at or absent from the
 mobile home; the state of the mobile home and her possessions on the last
 day she was on the premises before Latona entered; and the state of the
 mobile home and her possessions after Latona had been inside. Tenant
 presented the testimony of the police officer that tenant had contacted
 after she discovered that her possessions were no longer in the mobile
 home. The police officer described his conversation with Robson about
 tenant recovering her belongings, and the fact that tenant had to obtain a
 court order before she was able to access her belongings.

 ¶ 4. At the close of tenant's evidence, landlords presented a
 number of motions, including for judgment as a matter of law on tenant's
 claim under the Consumer Fraud Act. The superior court granted judgment in
 favor of landlords on the claim, concluding that, although the CFA can be
 applied to landlord-tenant transactions generally, tenant had nonetheless
 offered no evidence that landlords were "covered persons" under the Act. 
 The superior court determined that tenant was required to prove that
 landlords were sellers as defined under the CFA-in this case, persons
 regularly and principally engaged in the business of renting property to
 consumers-and had not presented any evidence in support of this
 requirement. See 9 V.S.A. § 2451a(c) (defining term "seller" for purposes
 of CFA).
 
 ¶ 5. Landlords next presented their evidence, which tracked the
 position set forth in their opening statement. There they argued that they
 had not violated landlord-tenant law because plaintiff had already
 abandoned the mobile home at the time Latona entered and removed her
 belongings. Landlords presented evidence that tenant was gone from the
 mobile home for thirty-two to thirty-three days in a row; Latona tried to
 reach her by telephone at the mobile home but was unable to; Latona went to
 the home with the intention and plan of removing her belongings, which he
 had discussed with Robson; Latona found the window broken and tenant's
 electronic equipment missing when he entered the mobile home; and he
 removed tenant's other personal belongings, placed them in storage, and
 changed the lock on the mobile home. With regard to these actions, Latona
 testified, "I was advised that it was an abandoned dwelling, and I was
 doing what the law states in the book under abandoned dwellings." 
 Landlords also presented the theory that they did not deny plaintiff access
 to certain of her possessions-i.e., valuable items such as televisions and
 a DVD player-because those items had been stolen by whoever had broken into
 the trailer by breaking the window. Landlords did not deny that they had
 changed the lock on the mobile home and that they had taken tenant's
 personal belongings and put them in storage; nor did they contest that
 tenant had to obtain a court order to access her belongings in storage. In
 fact, Robson conceded that he told tenant that she would have to get a
 lawyer to get her things back. 

 ¶ 6. At the close of landlords' evidence, tenant moved for a
 directed verdict on landlords' defense that tenant had abandoned the home
 such that landlords were permitted to enter it without her consent. The
 superior court denied the motion, concluding that the evidence was mixed on
 the point and that a reasonable jury could find in favor of either party on
 the issue. The jury was charged and given a set of interrogatories drafted
 by the parties through which to render the verdict.
 
 ¶ 7. After deliberations, the jury returned a verdict in favor of
 landlords. On the special verdict form returned by the jury, however, the
 jury indicated that while it did not find that landlords had illegally
 evicted tenant, neither did they find that tenant had abandoned the mobile
 home such that entrance onto the premises by landlords would be
 permissible. Tenant moved for a new trial, arguing that it was
 inconsistent for the jury to find for landlords when the jury had also
 rejected landlords' only defense: the allegation that tenant had abandoned
 the property before Latona entered the mobile home on March 23, 2005. The
 superior court granted the motion, applying Vermont Rule of Civil Procedure
 49(b), which permits the court to order a new trial when answers to
 interrogatories in a special verdict form create an inconsistency. 
 Landlords filed this appeal.

 I.

 ¶ 8. On appeal, landlords argue that the jury's answers to the
 special interrogatories can be reconciled and that the superior court erred
 in granting a new trial. We review the superior court's decision to grant
 a new trial under Rule 49(b) for an abuse of discretion. Johnson v. United
 Postal Service, 2006 VT 57 ¶10, ___ Vt. ___, 904 A.2d 1089 (mem.).(FN4) 
 The parties' positions can be summarized as follows. Tenant argues--and the
 superior court agreed--that, because landlords' only defense against the
 claim of illegal eviction was their assertion that tenant had abandoned her
 property prior to March 23, 2005, it was inconsistent for the jury to find
 that tenant had not abandoned the property and also that landlords were not
 liable for illegal eviction. Landlords argue that the jury could have
 found that the claim of illegal eviction failed for any number of reasons,
 including a failure of proof on the elements of the claim, and that the
 jury's verdict should be accepted as submitted.
 
 ¶ 9. The jury was instructed as follows on the law of illegal
 eviction and the defense of abandonment (FN5): 

 Vermont law prohibits a landlord from directly or indirectly
 denying a tenant access to any possession of the tenant['s]
 rented or leased premises or property, except through proper
 judicial process.

 . . . .

 [I]n some instances, a landlord may enter a leased premises
 when three criteria are met showing abandonment by the
 tenant.

 Number one, if there are circumstances that would lead a
 reasonable person to believe that the leased premises are no
 longer occupied by the tenant[] as his or her full-time
 residence.

 And, number two, the rent is not current.

 And, number three, the landlord has made reasonable efforts
 to ascertain the tenant's intention.

 . . . .

 If all three of the criteria have been proven by the evidence
 in this case, then you may find that the tenant did legally
 abandon the premises. If, however, any one or two of these
 factors have not been proven, then you may not find that the
 plaintiff abandoned this trailer.

 . . . .

 If, however, you find the abandonment criteria have not been
 met and the defendants denied plaintiff access to the mobile
 home or her property therein, then you may find that the
 defendants illegally evicted the plaintiff, and they may be
 liable for damages incurred as a result of the illegal
 eviction.

 Landlords argue that the jury could have found, as an alternative, that
 tenant failed to prove the positive elements of her claim-in particular,
 that landlords denied her access to the mobile home or her possessions. 
 This theory is simply untenable in light of landlords' position at trial
 and the state of the evidence. In short, landlords conceded that they
 entered tenant's home, removed her personal belongings, placed them in
 storage until tenant obtained a court order, and changed the locks on the
 mobile home. Given these admissions, the jury's findings that tenant had
 not abandoned the property but also that landlords had not committed an
 illegal eviction are inconsistent, and the superior court did not abuse its
 discretion in ordering a new trial. See V.R.C.P. 49(b) (requiring either a
 new trial or further deliberation by jury where answers to special verdict
 interrogatories are inconsistent); Prouty, 143 Vt. at 454, 470 A.2d at 1155
 (noting that Rule 49(b) provides trial court with explicit options when
 jury returns inconsistent verdict).

 II.

 ¶ 10. In her cross-appeal, tenant argues that the superior court
 erred in granting landlords' motion for judgment as a matter of law on
 tenant's claim under the Vermont Consumer Fraud Act. Tenant argued that
 landlords had acted deceptively by structuring the rental as an installment
 purchase of the property "as is," thus relieving landlords of their duties
 to maintain a habitable premises. Tenant also argued that landlords
 generally abused and harassed her. In ruling on the motion, the superior
 court acknowledged that a jury could find that landlords had engaged in
 deceptive practices, and that the Act applied to landlord-tenant
 transactions as a general proposition.(FN6) See L'Esperance v. Benware,
 2003 VT 43, ¶14, 175 Vt. 292, 830 A.2d 675 (recognizing that landlord may
 be held liable under Vermont Consumer Fraud Act). Nonetheless, the court
 concluded that tenant was required to prove that landlords were "sellers"
 as defined by the Act: persons "regularly and principally engaged in a
 business of selling goods or services to consumers." 9 V.S.A. § 2451a(c).
 The superior court further concluded that there was no evidence upon which
 a reasonable jury could conclude that tenant had proved this element of her
 claim. The court's interpretation of the CFA is a legal question which we
 review de novo. Human Rights Comm'n v. Benevolent & Protective Order of
 Elks, 2003 VT 104, ¶13, 176 Vt. 125, 839 A.2d 576.

 ¶ 11. The superior court's reasoning is undermined by the plain
 language of the CFA, as well as our case law interpreting the Act. The
 "central provision" of the Act makes "[u]nfair methods of competition in
 commerce, and unfair or deceptive acts or practices in commerce, . . .
 unlawful." Elkins v. Microsoft Corp., 174 Vt. 328, 330, 817 A.2d 9, 12
 (2002) (quoting 9 V.S.A. § 2453(a)). The CFA allows this prohibition to be
 enforced as follows:

 Any consumer who . . . sustains damages or injury as a result
 of any false or fraudulent representations or practices
 prohibited by section 2453 of this title . . . may sue for
 appropriate equitable relief and may sue and recover from the
 seller, solicitor or other violator the amount of his damages
 . . . .

 9 V.S.A. § 2461(b).(FN7) It is true that, while the CFA defines the term
 "seller," it does not define the terms "solicitor" or "other violator." 
 Carter v. Gugliuzzi, 168 Vt. 48, 52, 716 A.2d 17, 21 (1998). The
 significance of this omission, however, is simply that we afford those
 undefined terms their plain meaning. 
 
 ¶ 12. This is the approach we took in Elkins. There we held that
 "other violator" was "a broad term" encompassing defendants in that case
 who were not "sellers" of "goods or services" under the statutory
 definitions of those terms. 174 Vt. at 331-32, 817 A.2d at 13. The
 specific issue in that case was whether a consumer could sue an "indirect
 seller" under the CFA-for example, the manufacturer of a product that was
 sold wholesale to a third party who then sold the product to the consumer. 
 We determined that under the plain meaning of the statutory language, there
 was no privity requirement-that is, no requirement that the defendant sold
 goods or services directly to the plaintiff. Id. We concluded that
 attributing a broad scope to "[t]he plain meaning of the ["other violator"]
 language" was supported by "the express legislative intent behind the
 statute to 'protect the public' against 'unfair or deceptive acts or
 practices' and to 'encourage fair and honest competition.' " Id. at 331,
 817 A.2d at 13 (quoting 9 V.S.A. § 2451) (further citations omitted). The
 plain meaning of "other violator" is anyone engaged in an unfair or
 deceptive commercial practice in violation of the CFA's prohibition on such
 activity. Stated another way, our focus in determining applicability of
 the CFA is the nature of the alleged violator's activities, not whether the
 violator falls into a defined statutory category.

 ¶ 13. This interpretation is supported by the express purpose of
 the CFA: "to 'protect the public' against 'unfair or deceptive acts or
 practices' and to 'encourage fair and honest competition.' " Id. at 331,
 817 A.2d at 13 (quoting 9 V.S.A. § 2451) (further citations omitted). "In
 light of this purpose, this Court has repeatedly held that the VCFA is
 'remedial in nature' and therefore must be construed 'liberally so as to
 furnish all the remedy and all the purposes intended.' " Id. (citations
 omitted). As we emphasized in Elkins, "[t]he Legislature clearly intended
 the VCFA to have as broad a reach as possible in order to best protect
 consumers against unfair trade practices." Id. Construing the CFA
 liberally, as we must, there is no basis for categorically excluding
 landlords in this case from the range of potential defendants under the
 CFA, given the court's conclusion that there was evidence landlords had
 engaged in unfair and deceptive commercial practices. The superior court
 should have permitted the claim to proceed.

 III.
 
 ¶ 14. Finally, tenant also challenges the superior court's
 decision not to grant a directed verdict on the issue of abandonment. 
 Specifically, tenant asserts that even if landlords presented evidence that
 she no longer occupied that mobile home as a full-time residence and that
 her rent payments were not current, landlords did not provide adequate
 support for the third element of the abandonment defense: that they made a
 reasonable effort to determine tenant's intentions before entering the
 mobile home. See 9 V.S.A. § 4462(a) (setting forth elements of defense of
 abandonment). In reviewing a trial court's decision on a motion for
 directed verdict, we view the evidence in the light most favorable to the
 nonmoving party and exclude the effect of all modifying evidence. Hunter
 Broad., Inc. v. City of Burlington, 164 Vt. 391, 393, 670 A.2d 836, 838
 (1995). At trial, landlords testified that they attempted to reach tenant
 by telephone before entering the mobile home. Viewing this evidence in the
 light most favorable to landlords, we cannot conclude that "there is no
 legally sufficient evidentiary basis for a reasonable jury to find for
 [landlords] on that issue." V.R.C.P. 50(a)(1).

 Affirmed in part, reversed in part, and remanded for further
 proceedings consistent with this decision.


 FOR THE COURT:



 _______________________________________
 Associate Justice

----------------------------------------------------------------------------------
 Footnotes

 FN1. Justices Burgess sat for oral argument but did not participate in
 this decision.
 

 FN2. Specifically, 9 V.S.A. § 2453(a) prohibits "[u]nfair methods of
 competition in commerce, and unfair or deceptive acts or practices in
 commerce."

 FN3. Specifically, 9 V.S.A. § 4463 prohibits a landlord from denying a tenant
 access to and possession of the leased premises and tenant's personal
 property in the absence of judicial process.


 FN4. Landlords argue that our review is de novo, citing Prouty v.
 Manchester Motors, Inc., 143 Vt. 449, 453, 470 A.2d 1152, 1154 (1983). The
 cited passage, however, is dicta. Furthermore, it is unclear whether the
 statement in Prouty that "the issue in this case is one of law" refers to
 the trial court's decision denying a new trial or its decision entering
 judgment for the plaintiffs. Johnson is the more recent and more clear
 precedent, and is consistent with our application of the abuse of
 discretion standard to the decision whether to grant a new trial under Rule
 59.

 FN5. Neither tenant nor landlords objected to the jury instructions at the
 time or challenge them on appeal. Further, the instructions accurately
 state the law as codified in 9 V.S.A. §§ 4462-4463. 

 FN6. The superior court did not analyze or rule on whether landlords had
 engaged in deceptive practices or whether any such practices occurred "in
 commerce" under the CFA. Rather, the court noted in passing that there was
 some evidence of deceptive practices, but ultimately focused on the
 definition of "seller" under the statute as the basis for granting summary
 judgment on the claim. Because the superior court did not address the
 other elements of a CFA claim, we need not decide today how these elements
 should be applied in the landlord-tenant context. Our holding is limited
 to the conclusion that a plaintiff need not prove that a defendant is a
 "seller" to maintain a claim under the CFA.

 FN7. The legislative history of the private-enforcement provision
 demonstrates that the scope of potential plaintiffs and defendants under
 the CFA was deliberately broadened over time. Originally, the CFA's
 prohibitions could be enforced only by the Attorney General. See 1967, No.
 132, § 1. In 1969, however, the Act was amended to permit a private cause
 of action, thus allowing individual consumers to sue when they are damaged
 by deceptive practices. See 1969, No. 45, § 7. The language was further
 broadened in 1973, when the private enforcement provision-which originally
 limited the range of possible defendants to a "seller" or "solicitor"-was
 amended to allow consumers to sue "other violators" as well. See 1973, No.
 110, § 5.