Madowitz v. The Woods at Killington Owners' Ass'n, Inc., No. 396-7-02 Rdcv (Teachout, J., Jan. 31, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Docket No. 396-7-02 Rdcv** |

**Richard Madowitz, et al.,**
        **Plaintiffs**

**v.**

**The Woods at Killington Owners' Association, Inc.,**
        **Defendant**

### DECISION
### Motions for Summary Judgment:
### Plaintiffs' Claim and Defendant's Counterclaim

This case is before the Court on motions for summary judgment as to the two remaining causes of action in the case: Plaintiffs' claim for interference with their rights to develop additional condominium units at The Woods in Killington, and the counterclaim of the Defendant The Woods at Killington Owners' Association's ("the Association") for consumer fraud. Plaintiffs, successors in interest to the original developer, are represented by Alan P. Biederman, Esq.[1] The Association is represented by James B. Anderson, Esq. Oral argument was heard on November 30, 2011. For the reasons set forth below, summary judgment is granted against the Plaintiffs on their claim for interference with development rights, and against the Association on its consumer fraud claim.

The Woods at Killington ("The Woods") is a condominium development located in Killington, Vermont. Killington 43 Associates, Inc. was the original developer of The Woods. The Woods was created by a Declaration of Condominium filed on July 25, 1985. By the terms of the Declaration, the developer intended at the outset to add more units than existed at the time the Declaration was filed. These additional units were to be added in phases.

The original Declaration of Condominium contained a limited power of attorney as a means for unit owners to give prior consent to the dilution of their common ownership interest to be caused by future development. Beginning in 1986, the original developer conveyed condominium deeds containing language that expressly limited the power of attorney to a period of ten years. The original developer conveyed 105 of these deeds in all, with the last being given in 1990. These deeds created a conflict with the provision for future development allowed for by the Declaration of Condominium, which had no such ten-year limitation.

After the original developer entered foreclosure, it conveyed its interest in The Woods to

---

[1] The suit was filed by Plaintiffs Richard Madowitz and Douglas Kohl. Subsequently, the Complaint was amended to add Amherst Realty, LLC as a Plaintiff. Mr. Kohl died during the pendency of the case, and the legal representative of his Estate is now Coplaintiff with Mr. Madowitz and Amherst Realty.

Probos, Ltd. In 1994, Probos subsequently conveyed development rights to the present Plaintiffs. It is undisputed that at the time of this conveyance, Plaintiffs were unaware of the conflict between the language of the Declaration of Condominium and the language of the 105 deeds. After their purchase, Plaintiffs began to prepare for additional development. The Association, on behalf of its members, opposed their plans. The first ten-year limited powers of attorney began to expire in 1996, and the conflict between the Declaration and the deeds became apparent.

In June 1998, a contractor hired by Plaintiffs came on the condominium property and a representative of the Association told him that he was trespassing and asked him to leave the premises, which he did. This incident prompted a series of negotiations between the parties. In addition to the issue caused by the conflicting language between the deeds and the Declaration of Condominium, the parties disagreed as to a number of "development issues," including the use of a sports complex, repair work to roads and bridges, upgrades to water and sewer facilities, Association approval of building designs, and the restricting of future Association dues and assessments. The Association opposed any further development of the Woods until these development issues were resolved. Ultimately, the series of negotiations was unsuccessful, and the Association continued to oppose Plaintiffs' proposed development.

The Association opposed an extension of the Act 250 permit necessary to allow Plaintiffs to undertake further development. Plaintiffs' Act 250 permit expired in 2000; they sought to extend it until 2005, and in 2000 and 2001, the Association appeared before the District Environmental Commission in opposition to extension of Plaintiffs' Act 250 permit. The District Commission declined to extend the permit.

Plaintiffs initiated this suit on July 12, 2002. They sought a declaratory judgment that the Declaration of Condominium controlled over the contrary language in the 105 deeds as well as damages for the Association's interference with their development rights. In an opinion dated October 10, 2008, this Court granted partial summary judgment to the Plaintiffs on the issue of the conflicting language between the Declaration of Condominium and the deeds. The Court concluded that the language in the Declaration of Condominium allowing for further development governed over the language in the deeds seemingly prohibiting development after the expiration of a ten-year period. *Madowitz v. The Woods at Killington Owners' Ass'n, Inc.*, No. 396-7-02 Rdcv (Vt. Super. Ct. Oct. 10, 2008) (Teachout, J.), available at http://www.vermontjudiciary.org/20062010%20TCdecisioncvl/2008-11-12-1.pdf. The Court also granted partial summary judgment to the Association on the issue of whether the Association was liable to Plaintiffs based on its opposition to a permit extension before the District Environmental Commission. *Id.*

The Association pursued an interlocutory appeal on the issue of whether the language in the deeds could amend the language of the Declaration of Condominium. On July 2, 2010, the Vermont Supreme Court, by a three-to-two vote, affirmed the ruling of this Court. The Supreme Court held the language contained in the deeds necessarily conflicted with the language contained in the Declaration of Condominium and that, in the event of a conflict, the language in the Declaration controls. *Madowitz v. The Woods at Killington Owners' Ass'n, Inc.*, 2010 VT 37, 188 Vt. 197. The case was remanded to this Court, and on November 18, 2011, the Court granted the Association's Motion to Amend, allowing it to add a consumer fraud counterclaim.

## Plaintiffs' Claim

Plaintiffs claim that the Association wrongfully interfered with their legitimate development rights under the Declaration, and they claim as damages lost profits from the additional development they were prevented from completing. The Association argues that it is not liable to Plaintiffs for any of its actions in opposing further development at The Woods. It also argues that Plaintiffs cannot prove damages as a matter of law.

Plaintiff's theory of liability is that the Declaration of Condominium, as construed by the Vermont Supreme Court, is a contract that the Association breached by opposing further development at The Woods. Plaintiffs argue that the dispute as to whether the language in the Declaration or the deeds governed is not relevant to the issue of the Association's liability. Plaintiffs claim that the Association breached the Declaration in two ways: it prevented the Plaintiffs' contractor from entering onto the property and it sought to block further development that the Plaintiffs were entitled to undertake under the Declaration.

Plaintiffs allege that the Association breached the power of attorney portion of the Declaration, which allows Plaintiffs to undertake further development at The Woods without gaining the consent of the individual unit owners. By its terms, this provision is written to provide a mechanism for future development. It does not create any affirmative duty on behalf of the Association and Plaintiffs cannot claim breach of a specific contract provision. Therefore, Plaintiffs' claim is in the nature of a breach of the general covenant of good faith and fair dealing. In order to succeed on a breach of good faith and fair dealing claim, Plaintiffs must show that the Association "breached an implied-in-law promise not to do anything to undermine or destroy [Plaintiffs'] rights to receive the benefit of the parties' ... agreement." *Monahan v. GMAC Mortgage Corp.*, 2005 VT 110, ¶ 3, 179 Vt. 167. Plaintiffs assert that by opposing their development rights from 1998 onward, the Association acted in bad faith by interfering with their rights under the contract.

With regard to that portion of the Association's claim based on the Association's opposition before the District Commission to extension of the Act 250 permit, this Court has already ruled that the Association is not liable: "Plaintiffs have not shown a legal basis for liability for damages for interference with their claimed rights where the claimed wrongful act is the Association's attempt to exercise and enforce rights and terms contained in the deeds of its members." *Madowitz v. The Woods at Killington Owners' Ass'n, Inc.*, No. 396-7-02 Rdcv, at *9 (Vt. Super. Ct. Oct. 10, 2008) (Teachout, J.), available at http://www.vermontjudiciary.org/20062010%20TCdecisioncvl/ 2008-11-12-1.pdf.

The decision specifically left open the possibility of liability for the 1998 incident:

> Plaintiff's second claim of interference is that when the Plaintiffs' contractor was working on constructing new infrastructure as part of the planned expansion, a representative from the Association approached the contractor and claimed trespass, causing the contractor to stop work. The record regarding this claim is not sufficient to support a summary judgment ruling of liability on the part of the Association for such interference.

*Id.* The record has now been more fully developed. Plaintiffs argue that by threatening the contractor with a claim of trespass while he was attempting to carry out lawful development, the Association wrongfully interfered with Plaintiff's rights under the Declaration of Condominium. The Association counters that it had the legal right to threaten to engage in litigation and that its agent was asserting this "litigation privilege" when he informed the contractor that he was trespassing. See *Jacobson v. Garzo*, 149 Vt. 205, 209 (1988); *Kollar v. Martin*, 167 Vt. 592, 594 (1997) (mem.).

Plaintiffs also claim that the Association breached the covenant of good faith and fair dealings by thwarting additional development, specifically by insisting on a resolution of the development issues before allowing Plaintiffs to proceed with development. See *Carmichael v. Adirondack Bottled Gas Corp.*, 161 Vt. 200, 208 (1993) (holding that "[e]ach party to a contract makes the implied promise that each will not do anything to undermine or destroy the other's rights to receive the benefits of the agreement"). The determination of a breach of the covenant of good faith and fair dealing is ordinarily a question of fact for the factfinder. *Id*. at 209.

The Association argues that even if it breached an implied promise in the Declaration of Condominium by telling Plaintiffs' contractor to leave and by opposing Plaintiffs' further development plans, it is entitled to summary judgment in its favor because Plaintiffs cannot prove damages as a matter of law. It argues that any damages claimed by Plaintiff are too speculative to support a judgment, relying on the principle that "An injury based on speculation about uncertain future events is no injury at all." *Hedges v. Durrance*, 2003 VT 63, ¶ 12, 175 Vt. 588.

Plaintiffs seek over $3,000,000 in lost profits from the sale of unbuilt units. In order to be entitled to lost profit damages, Plaintiffs must show that the damages are not speculative. See *Pinewood Manor, Inc. v. Vt. Agency of Transp.*, 164 Vt. 312, 318 (1995) (denying lost profit damages that relied on "speculation and conjecture"). They must show that there was a sound factual basis, demonstrated by established business performance, for their claim of lost profits. "The general rule is that evidence of expected profits from a new business is too speculative, uncertain, and remote to be considered and does not meet the legal standard of reasonable certainty." *Berlin Dev. Corp. v. Vt. Structural Steel Corp.*, 127 Vt. 367, 372 (1968). Accordingly, new businesses without a history of making profits are not entitled to lost profit damages. *Id*.

Plaintiffs assert that they have a history of making profits in Massachusetts doing condominium development projects similar to what they would have undertaken at The Woods. However, the two Plaintiffs had not previously worked together in a business entity engaged in condominium development. While each had been successful in separate business endeavors, they had worked separately in different business entities. This would have been their first project together. Furthermore, neither had any prior history of condominium development in Vermont. Without evidence of prior success in condominium development under Vermont's unique regulatory framework, any evidence of future lost profits is entirely speculative. As first-time business partners and first-time

Vermont condominium developers, Plaintiffs cannot meet the standard necessary to prove lost profit damages. Therefore, the Association is entitled to summary judgment as a matter of law.

## Consumer Fraud Counterclaim

The Association claims consumer fraud based on the fact that the deeds given to unit owners that contained a ten-year limit on future development represented a time limit on the possibility of further development that was a deceptive misrepresentation.

A fundamental flaw with respect to the consumer fraud counterclaim is that Plaintiffs did not give the deeds or make such representations as they were successors in interest to the original developer. The Association asserts that Plaintiffs ratified the original developer's "deceptive act or practice" by continuing to pursue development at The Woods beyond the ten-year limitation period contained in the deeds. Plaintiffs argue that they cannot be liable to the Association for consumer fraud because they purchased their development rights without knowledge of the original developer's alleged consumer fraud.

The Vermont Consumer Fraud Act allows victims of fraudulent practices to recover damages from a "seller, solicitor, or other violator." 9 V.S.A. § 2461(b). Plaintiffs, who are multiple degrees removed from the original developer, are not themselves sellers or solicitors within the meaning of the Act. Only if they are "other violator[s]" can they be found viable. In addressing the "other violator" language, the Vermont Supreme Court has stated that it applies to "anyone engaged in an unfair or deceptive commercial practice in violation of the CFA's prohibition on such activity." *Sawyer v. Robson*, 2006 VT 136, ¶ 12, 181 Vt. 216. The focus is on the nature of the alleged violator's activities. *Id*.

Here, the Plaintiffs did not themselves undertake any activities that could be considered fraudulent within the meaning of the Act. They were undisputedly ignorant of the conflict between the Declaration and the deeds when they purchased the development rights. Although they continued to attempt to develop The Woods after they became aware of the conflict, this is not fraudulent conduct. In fact, their right to develop was later vindicated by the Vermont Supreme Court. If any consumer fraud took place in the giving of deeds with a ten-year limitation on the power of attorney, the conduct was that of the original developer.

The issue, therefore, is whether Plaintiffs can be liable for consumer fraud for "ratifying" alleged fraud of the original developer. The Court can find no Vermont cases where a good-faith purchaser of a property was held liable for a previous owner's consumer fraud. The Consumer Fraud Act does not impose strict liability. *Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 243-44 (1986). In order to be liable under the act, Plaintiffs themselves would have to have engaged in some form of fraudulent conduct. Simply purchasing the development rights without knowledge of the incompatible deeds, and seeking to use the rights, is not sufficient. The Association's consumer fraud counterclaim based on ratification fails as a matter of law.

Moreover, the Association lacks standing to bring a consumer fraud claim in this case. A condominium association such as Defendant is entitled to bring claims on "behalf" of its

members with regard to common areas. 27 V.S.A. § 1327. As indicated in the statute, these claims are not the Association's own but rather are derivate of the unit owner's individual claims. In this case, the unit owners stand in different positions vis-à-vis any alleged original consumer fraud. The Association cannot adopt a one-size-fits-all approach and bundle the various claims of all unit owners.

Only those unit owners who purchased their units before the alleged consumer fraud was exposed would potentially be able to make a claim. See *Meadowbrook Condo. Ass'n v. S. Burlington Realty Corp.*, 152 Vt. 16, 25 (1989) (holding that only unit owners who purchased their units before defects became apparent are entitled to recovery). Unit owners who sold their units after the conduct was discovered but before the commencement of this suit cannot be represented by the Association because the Association can only bring claims on behalf of current unit owners. See *id*. at 25 n. 1 (noting that these unit owners would maintain individual claims). Finally, all present unit owners who purchased their units after the alleged consumer fraud came to light would not have grounds for any claim. See *id*. at 25 (noting that post-discovery sale prices presumably reflect patent defects). Therefore, the Association has no claim to prosecute on their behalf.

As to those unit owners with a potential claim, any recovery would require a unit-by-unit determination. Furthermore, if these unit owners could recover, the recovery would belong to the individual unit owners and not to the Association as an organization. See *id*. at 21. For all these reasons, the Association does not have standing to pursue a consumer fraud claim in this case.

### Summary

For the reasons set forth above, summary judgment is granted to the Defendant on the Plaintiffs' claim, and to the Plaintiff on the Defendant's counterclaim.

### ORDER

Defendant's Motion for Summary Judgment filed January 28, 2011 is *granted*.
(MPR #16)

Defendant's Motion for Summary Judgment filed February 18, 2011 is *denied*.
(MPR #17)

Plaintiffs' Motion for Partial Summary Judgment filed September 6, 2011 is *granted*.
(MPR #26)

Defendant's counsel shall prepare a Judgment.

Dated at Rutland this 31st day of January, 2012.

_____
Hon. Mary Miles Teachout
Superior Court Judge

6